STATE OF CONNECTICUT *v.* JERRY LEE DAVIS
(11915)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 6, 1985—decision released February 25, 1986

*John F. Kavanewsky, Jr.,* for the appellant (defendant).

*Peter J. Ponziani,* special assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Raymond Doyle* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

CALLAHAN, J. A jury found the defendant, Jerry Lee Davis, guilty of robbery in the first degree, a violation of General Statutes § 53a-134 (a) (3).[1] He was sentenced to imprisonment for seven years. On appeal, he claims that the trial court erred in: (1) refusing to suppress an out-of-court photographic identification and a subsequent in-court identification, and (2) refusing to instruct the jury adequately on the subject of eyewitness identification. We find no error.

---

[1] General Statutes § 53a-134 (a) (3) provides: "Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

The jury could reasonably have found the following facts: At about 7 a.m. on March 25, 1982, in Danbury, the victim, a thirteen year old girl, was accosted on her way to school by a black male holding a knife. He told her if she did not surrender her pocketbook, he was going to cut her throat. After taking the victim's purse, the robber entered a small red car with green patches and was driven away by an unidentified operator. That afternoon, when the victim returned home, she told her mother about the incident and her mother called the police. Officer Thomas Mack of the Danbury police department talked with the victim and obtained a description of her assailant. Although the victim did not recall how long she had had the robber in view, she was able to describe him in detail. She told the officer that he was wearing a green sweater and blue coveralls with suspenders and that he had a moustache and a growth of facial hair, but not a full beard.

We first address the defendant's claim that the trial court erred in refusing to suppress the out-of-court photographic identification of the defendant and the subsequent in-court identification. "A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984). This court has repeatedly stated that " ' "[i]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on the 'totality of the circumstances.' " . . . ' " *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 837 (1985); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985); *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980).

The day after the robbery, Mack and another officer went to the victim's home and displayed seven photographs to the victim in an effort to have her identify the assailant. The victim viewed the photographs and immediately picked out a photograph of the defendant as the person who had confronted her the morning before. At the time she viewed the photographs, she knew the police had a suspect in custody. The photographic array used by the Danbury police department contained black and white photographs of similar looking black males. All of the men pictured in the photographs had similar builds and some type of facial hair. Each photograph showed, on a placard, the date of the arrest of the individual depicted. The only recent arrest date on the photographs in the array was the date of March, 1982, which was on the photograph of the defendant. In the photograph, the defendant was depicted wearing the same clothes worn by the robber at the time of the crime, bibbed blue jeans with a shirt underneath.

We agree with the defendant that the similar clothing and the recent arrest date in the photograph and the fact that the victim knew a suspect was in custody made the photographic display unnecessarily suggestive; nevertheless, we find that the victim's identification of the defendant was reliable based on the totality of the circumstances. "The constitutional test for reliability requires the trial court to consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L.

Ed. 2d 140 (1977); *State* v. *Theriault,* supra, 373–74.''
*State* v. *Hinton,* supra, 295–96.

At the time of the robbery, the victim viewed the
defendant from a distance of about three and one-half
feet. She also had the opportunity to view him as he
ran to his car which was approximately 100 feet away.
She described the robber ''as being five foot ten, large
frame, almost heavyset, having a wild-type hair, some
facial hair, and was wearing blue jeans-type overalls,
with a green shirt underneath the overalls,'' an accurate
and detailed description which fit the defendant. The
identification procedure took place only thirty-two
hours after the robbery. Mack testified that when the
victim picked out the photograph of the defendant she
stated that ''she recognized him, and she felt certain
that this was the individual, that the features matched
the features that she knew existed.'' There is no indi-
cation that the victim based her identification on the
clothing worn by the defendant or on the dates in the
photographs. The victim testified that ''I saw the num-
bers, but I didn't know what they meant. I really didn't
pay much attention to them. I was just looking at the
faces.'' We conclude that the out-of-court photographic
identification procedure even though unnecessarily sug-
gestive resulted in a reliable identification and did not
violate the defendant's right to due process. The trial
court did not err in refusing to suppress the out-of-court
identification.

Further, we do not find error in the refusal of the
trial court to suppress the in-court identification of the
defendant by the victim. This court will set aside a
conviction based upon an in-court identification which
follows an out-of-court identification only '' 'if the pho-
tographic identification procedure was so imper-
missibly suggestive as to give rise to a very substan-
tial likelihood of irreparable misidentification.' ''

*State* v. *Fullwood,* 193 Conn. 238, 243–44, 476 A.2d 550 (1984), quoting *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Parker,* 197 Conn. 595, 598, 500 A.2d 551 (1985); *State* v. *Vass,* 191 Conn. 604, 609, 469 A.2d 767 (1983); *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983). In the present case, the photographic identification procedure resulted in a reliable identification and did not give rise to a substantial likelihood of irreparable misidentification. The trial court acted properly in refusing to suppress the victim's in-court identification.

The defendant's second claim on appeal is that the trial court erred in its instructions to the jury on eyewitness identification by refusing to include in its charge a *Telfaire* instruction on identification, an instruction which was requested by the defendant. The *Telfaire* instruction tells the jury to consider in appraising the identification testimony of a witness the adequacy of his opportunity and his capacity to observe the offender; the length of time available for the witness to observe the offender; the proximity of the witness to the offender; whether the witness had seen or known this person in the past; whether the identification was a product of the witness' own recollection; and the credibility of the witness. *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972).

"Although we have indicated that a court should grant a request for a charge regarding the dangers of misidentification in an appropriate case, we have not found reversible error in the failure to do so where 'the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear, or inconsistent.' *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); see *State* v. *Maturo,* 188 Conn. 591, 600, 452 A.2d 642 (1982); *State* v. *Tinsley,* 181 Conn. 388, 393–94, 435 A.2d 1002 (1980), cert. denied,

449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981)." *State* v. *George,* 194 Conn. 361, 375, 481 A.2d 1068 (1984).

In the present case, the testimony of the victim was not uncertain, unclear or inconsistent. She was able to give an accurate and detailed description of the defendant and she did not hesitate in choosing, from among the array of photographs, the photograph of the defendant as her assailant. She also identified him with certainty in the courtroom.

Additionally, this court has specifically dealt with a trial court's denial of a requested *Telfaire* instruction in *State* v. *McKnight,* 191 Conn. 564, 469 A.2d 397 (1983). In *McKnight,* we held that the trial court did not err in refusing to give the requested *Telfaire* instruction because the "salient principles of the court's charge adequately covered the dangers of misidentification." Id., 583. " ' "A charge to the jury will not be critically dissected for the purpose of discovering possible inaccuracies of statements, but the charge is to be considered, rather, as to its probable effect upon the jury in guiding them to a correct verdict in the case." ' *State* v. *Miller,* 186 Conn. 654, 661, 443 A.2d 906 (1982)." *State* v. *McKnight,* supra, 582. " 'The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law.' *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978)." *State* v. *McKnight,* supra, 583.

In the present case, the trial court's charge to the jury included the following references to the identification issue: "one of the main points of contention is the identification of the Defendant"; "[y]ou should also consider the opportunity of a witness for observation, the impressions such witness made upon you for his

or her power of observation, the reasonableness of the story told and, then, consider what are the fair and reasonable conclusions or inferences that you can draw"; and "it is incumbent upon the State to prove beyond a reasonable doubt that Mr. Davis was the individual involved in the incident complaint by [the victim]." The trial court also instructed the jury on the credibility of the witnesses. We find that, in viewing the charge as a whole, the trial court fairly and adequately addressed the dangers of misidentification.

There is no error.

In this opinion the other judges concurred.