ADELE N. ELLICE, EXECUTRIX (ESTATE OF DOUGLAS
V. ELLICE), ET AL. *v.* INA LIFE INSURANCE
COMPANY OF NEW YORK
(13349)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued April 14—decision released July 5, 1988

*David M. Reilly,* for the appellant (plaintiff).

*Lawrence L. Connelli,* for the appellee (defendant).

CALLAHAN, J. Adele N. Ellice, individually and as executrix of the estate of her deceased husband, Douglas V. Ellice, instituted this action seeking to recover the

proceeds of an accident insurance policy issued by the defendant, the INA Life Insurance Company of New York, to the plaintiff's decedent's employer, Shearson/American Express, Inc. The policy covered those persons listed on a schedule of insureds that included the plaintiff's decedent. Specifically, the policy insured against loss "resulting directly and independently of all other causes from bodily injuries caused by accident occurring while this policy is in force as to such Insured." The plaintiff alleged that the death of her decedent resulted from head injuries he sustained when he accidentally fell, after being startled, while ascending a stairway in his home at approximately 4 a.m. on October 20, 1982.[1] The defendant, however, claimed that the death of the plaintiff's decedent resulted from an arrhythmia[2] which caused his heart to stop, which then caused him to fall down the stairs. The defendant contended that the arrhythmia was brought about by the plaintiff's decedent's poor physical condition and preexisting heart disease.[3]

---

[1] At trial, the plaintiff's medical expert, Paul D. Ephraim, an internist, testified that, in his opinion, the plaintiff's decedent died after "he fell and suffered a head injury and a brain injury that resulted in probable temporary cessation in his respiration and this led to the anoxic brain damage." He further testified that the brain damage subsequently caused other vital organs to fail, thus necessitating the cessation of resuscitative measures at the hospital.

[2] The defendant's medical expert, Wayne H. Carver, a forensic pathologist, described an arrhythmia as a "disturbance of the heart rhythm leading the heart to shut down, causing poor, low quantities of oxygen to reach the brain and the entire brain or the most sensitive cells in the brain, the neurons, the ones that actually do the work, are dying and leaving you with a coma."

[3] Contrary to the opinion of Ephraim, Carver, who was the acting chief medical examiner for the state of Connecticut, testified that the "underlying cause [of the plaintiff's decedent's death] was heart disease, specifically cardiomegaly with fibrosis, or simply termed, enlarged heart. Probably from high blood pressure which led to an arrhythmia, which led to a stoppage of the heart, which led to the death of brain cells and then the last, from there led to the entire trail that led to the deterioration of his other organs." Carver further testified that the arrhythmia which caused the plain-

A jury returned a verdict for the defendant and the court, thereafter, rendered judgment thereon. The plaintiff filed the instant appeal to the Appellate Court which appeal was then transferred to this court pursuant to Practice Book § 4023. On appeal the plaintiff argues that the trial court erred in: (1) granting the defendant's oral motion in limine, to exclude from evidence the date and manner in which the plaintiff's decedent had fractured his left arm prior to the October 20, 1982 incident; and (2) failing to instruct the jury clearly and consistently with regard to the defendant's liability under the policy in question.[4]

I

The plaintiff first claims that the court erred in granting the defendant's oral motion in limine, which ruling excluded certain evidence concerning the plaintiff's decedent's preexisting broken arm. She argues that the date and the details of the cause of the fractured left arm that were excluded were relevant to the following issues: (1) "the producing cause of a painful arm which rendered the plaintiff's [decedent's] ability to

tiff's decedent's heart to stop occurred while he was on the stairs, which in turn, caused him to collapse and fall down the stairs. Carver also specifically testified that there was no evidence whatsoever to indicate that the plaintiff's decedent suffered a head injury in the fall which could have caused brain damage.

[4] The plaintiff also raised the following issue in her preliminary statement of issues: "Was the trial court correct in directing a verdict in favor of the defendant as against the plaintiff estate where that estate was neither a party to nor a beneficiary under the insurance policy, and where there was no evidence that an estate existed or that Adele Ellice was an executrix of any such estate." While there is no dispute that the trial court directed a verdict for the defendant on the plaintiff's claim as executrix of her husband's estate, the plaintiff failed to brief the issue and did not pursue this claim at oral argument before this court. Consequently, we deem the claim to have been abandoned and we decline to address it. *State* v. *Gaines,* 196 Conn. 395, 398 n.2, 493 A.2d 209 (1985); *State* v. *Martin,* 195 Conn. 166, 167 n.1, 487 A.2d 177 (1985).

maintain balance and to withstand surprise in the middle of the night in his attempt to ascend the darkened stairway"; (2) "the defendant's negating the causal relationship between the broken arm and any cause which would defeat recovery under the charge given"; (3) "[w]hy the plaintiff's decedent was up at four o'clock in the morning and what medication he has been taking during those days"; and (4) "[t]he same relevance that any prior condition would have as to this case."[5] The plaintiff further argues that the exclusion of this evidence was prejudicial in that it raised suspicions in the jury's mind because references to the date and cause of the broken left arm were excised from the plaintiff's decedent's hospital records. We disagree.

The following facts are relevant to this issue. On October 15, 1982, the plaintiff and her decedent were carrying a wheelchair down the basement stairs in their home. As they descended the stairway, the wheelchair slipped from the plaintiff's hands and knocked the decedent to the cement floor of the basement. As a result, the plaintiff's decedent fractured his left arm, which was later placed in a sling.[6]

After the jury had been selected, the defendant orally moved in limine to exclude from evidence the date and cause of the plaintiff's decedent's fractured left arm. The defendant argued that such evidence was totally irrelevant because the plaintiff's complaint limited the cause of the injuries and loss to the October 20, 1982

---

[5] At oral argument before this court, the plaintiff also argued that evidence of the fact that the arm had been fractured five days prior to October 20, 1982, is relevant to her burden of proof in that it reveals the absence of a suicide attempt and that the fall resulted from the pain in the arm, thus indicating the injuries were accidentally inflicted. Besides the fact that this argument lacks any evidentiary basis, we find it to be totally irrelevant because the record fails to reflect that the defendant ever put suicide into issue. Therefore, we decline to address the claim.

[6] The plaintiff testified to these facts in the absence of the jury. The jury never was told the specific cause of the plaintiff's decedent's fractured arm.

incident. In addition, the defendant asserted that such evidence had no probative value and was, in fact, prejudicial because it would confuse and mislead the jury, cause the jury to give attention to an accident that was not connected to the incident in question, and was not alleged to have caused the plaintiff's decedent's loss or injuries. After oral arguments by both counsel, the trial court granted the defendant's motion in limine and ordered that related portions of the hospital records be excised. We find no error.

## A

"The rules for determining the admissibility of evidence are well settled. The trial court has broad discretion to determine both the relevancy and remoteness of evidence. *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); *Turgeon* v. *Turgeon,* 190 Conn. 269, 273, 460 A.2d 1260 (1983); *Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 153, 429 A.2d 827 (1980). Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters. *State* v. *Fritz,* supra, 167–68; *State* v. *Boucino,* supra; *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985). In considering the relevancy of evidence, we ask whether 'it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* [195 Conn. 651, 659, 491 A.2d 345 (1985)]; *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978).' *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985). Because there is no precise and universal test of relevancy, however, the question must ultimately be addressed on a case-by-case basis in accordance with ' "the teachings of reason and judicial experience." ' *State* v. *Sharpe,* supra, 659; *Johnson* v. *Healy,* 183 Conn. 514, 516, 440 A.2d 765 (1981); *Hoadley* v. *University of Hartford,* 176

Conn. 669, 672, 410 A.2d 472 (1979)." *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987); see also *State* v. *Thomas,* 205 Conn. 279, 283, 533 A.2d 553 (1987). Applying these principles to the case at hand we conclude that the trial court did not abuse its discretion in granting the defendant's motion in limine.

At the outset, we note that the trial court's ruling was very limited in scope and only prevented the plaintiff from introducing evidence to indicate that the plaintiff's decedent had fractured his left arm on October 15, 1982, while carrying a wheelchair down the basement stairs in his home. The court placed no limitation upon the plaintiff with regard to presenting evidence concerning any effect the decedent's broken arm might have had on his fall on October 20. The court also allowed the plaintiff to testify that the fracture was a "fresh" injury and that it resulted from a previous fall. The only way in which the trial court restricted the plaintiff was that it did not allow testimony with regard to the details of the prior unrelated accident.

We find the trial court's ruling appropriate: first, because the complaint specifically alleged that the injuries to the plaintiff's decedent had resulted from the "accident on the 20th day of October, 1982," and the plaintiff never sought to amend the complaint to broaden the cause of the injuries to include a prior incident or accident; and second, because the plaintiff offered no evidence to permit even a remote inference to be drawn that the two stairway incidents were in any way causally related. In fact, the uncontroverted evidence establishes otherwise. The plaintiff's decedent fell on October 15, 1982, because the wheelchair, which had slipped out of the plaintiff's hands, had knocked him down the cellar stairs to the concrete floor. The October 20, 1982 incident, however, according to the claims of the parties, resulted either from the plain-

tiff's decedent being startled or from a heart attack.[7] We can discern no connection between the two incidents, nor has any been pointed out. Thus, we fail to see the relevancy of the date, the cause or other details of the October 15 accident to the incident in question.

Notwithstanding the plaintiff's claims to the contrary, the trial court did not restrict the plaintiff's ability to demonstrate: the plaintiff's decedent's physical and emotional condition prior to October 20, 1982; the fact that he had a broken arm and that he had been taking a pain medication and a sleeping medication; and the effects that these factors may have had on his ability to maintain his balance and to ascend stairs. The trial court did not err by excluding other irrelevant evidence concerning the October 15, 1982 accident.

B

The plaintiff also claims that she was prejudiced by the trial court's ruling on the defendant's motion in limine by reason of the trial court's order that excised the corresponding portions of the Yale-New Haven Hospital records relating to her decedent's broken arm. The plaintiff argues that the excised portions raised suspicions in the jury's mind because it was left in the dark about a "terribly mysterious event . . . . They said, 'Oh, boy, what happened there.' They might have

---

[7] At various points throughout the record both the plaintiff and the defendant refer to the fact that the plaintiff's decedent died from either the head and brain injuries he sustained when he was startled and fell down the stairs, or from a *heart attack* he had while on the stairs that caused him to fall. It appears that both parties' references to a heart attack are erroneous and inadvertent. Carver testified that an arrhythmia occurred which had caused the plaintiff's decedent's heart to stop, which caused him to collapse and fall down the stairs. Carver also went on to differentiate between an arrhythmia and a primary cardiac event such as a heart attack. Therefore, we will treat the parties' references to a heart attack to mean an arrhythmia. It must be noted that whether he fell as a result of a heart attack or a heart stoppage brought about by an arrhythmia is of no consequence because in either case there would be no coverage under the policy.

said that maybe the plaintiff didn't have sufficient proof to show what happened there." We find this argument without merit. We have already concluded that the manner in which the plaintiff's decedent fractured his left arm on October 15, 1982, had absolutely no relevance to the October 20, 1982 incident. In addition, a review of the Yale-New Haven Hospital records reveals that there were only five pages, out of approximately ninety pages, where either a word or single sentence was excised. Therefore, we are unable to discern any way in which the excised portions of the Yale-New Haven Hospital records could have adversely affected the jury or its deliberations to the prejudice of the plaintiff. The trial court did not err in ordering the references to the October 15, 1982 accident of the plaintiff's decedent to be excised.

## II

The plaintiff next claims that the trial court erred by giving a confusing, misleading, erroneous and inconsistent charge to the jury regarding an insurer's liability under a policy insuring against loss resulting "directly and independently of all other causes from bodily injuries caused by accident." Specifically, the plaintiff claims that it was error to charge the jury that "the plaintiff must prove to you that there were no other causes contributing to [her decedent's] death, irrespective of whether those causes were natural, were diseases, or were other conditions not a result of the alleged accident on October twentieth." In addition, the plaintiff argues that it was error to charge that "the death must be caused directly or solely by accidental means independently of all other causes in which case the accident must be the sole cause of the insured's event. Where disease or bodily infirmity is a concurrent proximate cause of death, recovery for the plaintiff is precluded." The plaintiff contends that "[a] charge that the plaintiff could recover if she proved the

accident was a 'dominant' cause of death would have been correct." We disagree.

We begin by noting that a jury charge is to be considered from the standpoint of its effect on the jury in guiding them to a correct verdict. *State* v. *Fleming,* 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984). "A jury charge must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980)." *State* v. *Hinckley,* 198 Conn. 77, 88, 502 A.2d 388 (1985); see also *State* v. *Vessichio,* 197 Conn. 644, 650, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). A charge is not to be critically dissected for purposes of discovering possible inaccuracies; *State* v. *Davis,* 198 Conn. 680, 686, 504 A.2d 1372 (1986); *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); but rather, the initial charge and any supplemental charge are to be read as a whole. *State* v. *Cavros,* 196 Conn. 519, 528, 494 A.2d 550, cert. denied, 474 U.S. 904, 106 S. Ct. 233, 88 L. Ed. 2d 232 (1985); *State* v. *Topciu,* 183 Conn. 1, 6, 483 A.2d 803 (1981). " ' "The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." ' " *State* v. *Davis,* supra.

Primarily, the plaintiff takes issue with the trial court's charge as it relates to the following policy language: "directly and independently of all other causes from bodily injuries caused by accident." In the past, this court has had occasion to interpret virtually the identical clause in a number of accidental death or bodily injury policies. In each instance, we have required

the claimant under the policy to prove, by a preponderance of the evidence, that the insured was the victim of an accident and that the accident was the sole cause or sole proximate cause of the insured's death or bodily injury, independently of all other causes. Where preexisting bodily disease or infirmity, independent of the accidental injury, concurred, cooperated or contributed to produce the resulting injury, death or loss, we have held that no liability exists under such policy language. See *O'Brien* v. *John Hancock Mutual Life Ins. Co.*, 143 Conn. 25, 28, 119 A.2d 329 (1955); *O'Meara* v. *Columbian National Life Ins. Co.*, 119 Conn. 641, 644, 178 A. 357 (1935); *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 424, 172 A. 777 (1934); *Stanton* v. *Travelers Ins. Co.*, 83 Conn. 708, 710, 713, 78 A. 317 (1910).[8] This court has also recognized, however, that the mere presence of a preexisting illness or disease does not, in and of itself, automatically preclude a recovery under the type of policy in question. *Rinaldi* v. *Prudential Ins. Co.*, supra, 425; *Stanton* v. *Travelers Ins. Co.*, supra; see also 43 Am. Jur. 2d 672–73, Insurance § 609.

After a careful review of the trial court's instructions to the jury, we find that the court properly charged in accordance with the above stated principles of law. In explaining the pertinent policy provisions the court clearly stated numerous times that the plaintiff must

---

[8] For similar holdings in other jurisdictions see *Tschohl* v. *Nationwide Mutual Ins. Co.*, 418 F. Sup. 1124, 1126 (D. Minn. 1976); *United Ins. Co. of America* v. *Monroe*, 115 Ga. App. 747, 156 S.E.2d 99 (1967); *Continental Casualty Co.* v. *Skaggs*, 436 S.W.2d 510, 511 (Ky. 1969); *Lindemann* v. *General American Life Ins. Co.*, 485 S.W.2d 477, 480 (Mo. App. 1972); *Hicks* v. *Old Republic Life Ins. Co.*, 29 N.C. App. 561, 564, 225 S.E.2d 164 (1976); *Dunn* v. *Maryland Casualty Co.*, 339 Pa. Super. 70, 72, 75–76, 488 A.2d 317 (1985); *Connecticut General Life Ins. Co.* v. *Stice*, 640 S.W.2d 955, 957–58 (Tex. Civ. App. 1982); *Egan* v. *Travelers Ins. Co.*, 224 Wis. 596, 601–602, 273 N.W. 68 (1937); see also 43 Am. Jur. 2d 624, 671–73, Insurance §§ 556, 609; 84 A.L.R.2d 176, 185–86, § 3.

prove, by a preponderance of the evidence, that her decedent died directly from an injury sustained in an accident on October 20, 1982, and that there were no other causes contributing to his death. The court explained that, unlike ordinary accidental death and or injury policies that do not contain the pertinent limiting language, the accident in this case must be the sole cause of the insured's loss and not merely the dominant cause or a concurrent proximate cause. To illustrate this point, the court stated: "The plaintiff should recover, however, if you find that the death directly resulted from accidental bodily injury notwithstanding the fact that a disease or disorder or preexisting condition existed if such disease, disorder or preexisting condition did not contribute to the death. In other words, if you believe from the evidence that Mr. Ellice died as a result of anything other than just an accident on October 20, 1982, then the insurance company has no responsibility under the policy and your verdict should be for the defendant. On the other hand, if you find that the plaintiff has proved to you that Mr. Ellice died from an accident on October twentieth and that the death resulted directly and independently of all other causes from bodily injuries caused by the accident, you would then find for the plaintiff." In addition, the court repeated the specific policy language numerous times, thus clearly directing the jury's attention to the proper inquiry. Accordingly, we conclude that the court's charge, as a whole, was correct as a matter of law and provided sufficient guidance for the jury.

The plaintiff has also argued that the court's use of the terms "concurrent proximate cause" and "contributing cause" was erroneous because it interjected irrelevant issues into the case. The plaintiff asserts that the only real issue in the case was whether her decedent died as a result of injuries sustained in a fall or

whether he suffered and died of a heart attack which caused him to fall on the stairs. It must first be noted that the trial court used the terms "concurrent proximate cause" only by way of background or in conjunction with its use of examples to explain further the meaning of the specific policy language in question. Thus, we do not find that the court's use of these terms resulted in the interjection of irrelevant issues into the case. In addition, and more importantly, even assuming that the use of these terms was confusing or misleading to the jury, the trial court's supplemental charge clearly removed these terms from the jury's consideration. In response to the exceptions taken by both counsel to the initial charge and prior to the start of its deliberations, the trial court summoned the jury back to the courtroom and further instructed that "[c]oncurrent cause or dominant cause of some bodily infirmity or disease is not part of the case. The sole issue in the case . . . is whether the death resulted directly and independently of all other causes from bodily injuries from the accident. And that is the focus of your concern. You shouldn't be concerned with concurrent causes by other bodily injury or infirmity. The issue again under the language of the policy is whether the loss has resulted directly and independently of all other causes from bodily injuries caused by an accident."

The plaintiff further claims that the court should have charged the jury that the accident had only to be the predominant cause and not the sole or direct cause of the loss. While a number of jurisdictions have interpreted similar language in accidental injury and or death policies to require that the accident must be only the "efficient" or "predominant cause" of the injury or death to the insured; see *Barker* v. *INA Life Ins. Co.*, 607 F. Sup. 1075, 1077 (D.D.C. 1985); *Continental Casualty Co.* v. *Maguire*, 471 P.2d 636, 638–39 (Colo. App. 1970); *Jones* v. *Mountain States Telephone*

*& Telegraph Co.,* 105 Idaho 520, 670 P.2d 1305 (1983); *Duhon* v. *Colonial Life & Accident Ins. Co.,* 277 So. 2d 234, 236 (La. App. 1973); such is not the law of this state. Therefore, the trial court properly refused to charge as requested by the plaintiff.

Accordingly, we conclude that the trial court's charge was correct in law and was properly adapted to this case. The only issue, as presented by the parties, was whether the plaintiff's decedent died as a result of injuries sustained in a fall down the stairs, or whether he died as a result of a heart attack which was the cause of his fall down the stairs. The trial court properly limited the jury's deliberations to this issue.

There is no error.

In this opinion the other justices concurred.