## State of Connecticut v. Edgar Peter Tatum
### (13999)

Peters, C. J., Shea, Callahan, Glass and Covello, Js.

Argued April 25—decision released July 30, 1991

*Alicia B. Davenport* and *Steven M. Barry,* special public defenders, with whom, on the brief, was *Sally S. King,* for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Marcel A. Bryar,* law student intern, for the appellee (state).

SHEA, J. The defendant, Edgar Tatum, was charged in an information with one count of murder in violation of General Statutes § 53a-54a[1] and one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[2] At trial, the jury returned a guilty verdict on the murder charge, but failed to return a verdict on the assault charge.[3] The defendant was subsequently sentenced to a term of sixty years for the

[1] "[General Statutes] Sec. 53a-54a. MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53a-60 provides in pertinent part: "(a) A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] Following a mistrial on the assault count, the state entered a nolle prosequi on that charge.

murder conviction. He appeals from that conviction, claiming that the trial court improperly: (1) allowed the admission of an in court identification of the defendant after an unnecessarily suggestive pretrial identification procedure had been conducted; (2) instructed the jury on the issue of identification; (3) refused to instruct the jury on the substantive use of certain prior inconsistent statements; and (4) failed to conduct the trial in a fair and impartial manner. We affirm the judgment.

From the evidence presented the jury could reasonably have found the following facts. At approximately 10:30 p.m. on February 25, 1988, Larry Parrett was shot and killed in his home in Waterbury, where he lived with his girlfriend, Tracy LeVasseur. Anthony Lombardo, who lived on the same street, was also shot and wounded at the same time and place. Earlier that evening, Lombardo had been out walking his dog when he noticed a tall black man, later identified as the defendant, knocking on the door of Parrett's apartment. Lombardo approached the defendant, after having recognized him as someone he had seen at the apartment on other occasions. When LeVasseur opened the door from within, the defendant forced himself and Lombardo into the living room, where LeVasseur and Parrett were smoking cocaine. LeVasseur recognized the defendant as "Ron Jackson,"[4] a man from California who, along with other visitors from California, had spent a number of nights at the apartment selling drugs during the months preceding the incident. Parrett also had been involved in the sale of drugs. When the defendant and Parrett began to argue, Lombardo and LeVasseur left the room and went into the kitchen, where three other men were present. A few moments

---

[4] The defendant checked into a Southington hotel on February 23, 1988, under the name "Ronald Jackson" and checked out at 11:55 p.m. on the night of the shooting although checkout time was not until 11 a.m. the next day.

later, Lombardo returned to the living room to find the defendant pointing a gun at Parrett. Lombardo stepped between the two men, thinking that the defendant might be dissuaded from firing. The defendant nevertheless fired four shots from the gun, striking Lombardo in the shoulder and fatally wounding Parrett.

That night at the Waterbury police station Lombardo was shown a photographic array from which he chose a photograph of a black man named Jay Frazer as that of the man who had shot him and Parrett.[5] The same night LeVasseur also selected a photograph of Frazer from an array shown to her by the police. Neither array contained a photograph of the defendant. One week later, however, LeVasseur went to the Waterbury police and told them that she had identified the wrong man.[6] A nine person lineup was then conducted in which Frazer participated but the defendant did not. After seeing Frazer in person, LeVasseur told the police that he was definitely not the assailant. Thereafter, the police showed another photographic array to LeVasseur from which she chose the defendant's photograph as that of the person who had shot the victim. Lombardo was subsequently shown a photographic array that included the defendant's picture, but he declined to identify anyone, explaining that he preferred to see the individuals in person.[7] At the proba-

[5] Jay Frazer was another of the California visitors who had stayed on occasion at Parrett and LeVasseur's apartment to sell drugs. He and several others had been arrested in January, 1988, at the apartment after Parrett had asked his landlord to call the police. The defendant was not among those arrested.

[6] In the interim, LeVasseur realized that Jay Frazer was only about 5'3" or 5'4" tall, much shorter than the man who had shot Parrett and Lombardo. Lombardo's testimony on this point is consistent with LeVasseur's. He told the police on the night of the shooting that his assailant was over six feet tall.

[7] At the probable cause hearing, both parties referred to an in person lineup held in mid-May of 1988, from which Lombardo failed to select anyone as his assailant. Since there is no other mention of such a procedure

ble cause hearing and at trial, both Lombardo and LeVasseur identified the defendant as the man who had shot Lombardo and Parrett.

## I

The defendant first claims that the trial court deprived him of his due process rights under the fourteenth amendment to the United States constitution when it admitted Lombardo's in court[8] identification of him which, he argues, was tainted by an unnecessarily suggestive pretrial identification procedure in that Lombardo had viewed the defendant at the probable cause hearing.[9] The defendant argues that the fact that he was the only black man seated at the defense table "conveyed a clear message to Lombardo that [the prosecution] believed Edgar Tatum was the man who had shot him." He claims that Lombardo's subsequent identification of him at trial was the product of that unnecessarily suggestive procedure rather than the product of his independent recollection of the crime.

We note at the outset that the defendant failed to raise this claim in the trial court by way of either an objection to the procedure used at the probable cause hearing or a motion to suppress Lombardo's identifi-

anywhere in the trial record or in any of the appellate briefs, we exclude it from our recitation of the background facts.

[8] The defendant does not claim that Lombardo's *pretrial* identification of him at the probable cause hearing should have been excluded, nor that any of LeVasseur's identifications of him should have been excluded.

[9] At oral argument defense counsel vacillated as to whether he was claiming that the unnecessarily suggestive procedure was the probable cause hearing itself or the hearing in conjunction with Lombardo's previous participation in two photographic array procedures where he had selected the photograph of another man from the first and had declined to select any photograph from the second. Because counsel conceded that there was nothing suggestive about the earlier photographic array procedures themselves, we fail to see how they could in any way add to the suggestiveness of the setting at the probable cause hearing.

cation at trial. The defendant concedes that the claim was not preserved at trial, and therefore seeks appellate review pursuant to *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In *State* v. *Golding,* we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. The record in this case, albeit scant due to the fact that no suppression hearing was held, is adequate for us to review the claim. The defendant's claim that an unnecessarily suggestive pretrial identification procedure tainted a subsequent identification made at trial is one of constitutional magnitude.[10] *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). The third condition of *State* v. *Golding,* however, has not been met because the defendant has failed to establish that Lombardo's pretrial identification of him was the result of an unconstitutional procedure, the necessary predicate for exclusion of Lombardo's subsequent in court identification.

An in court identification must be excluded, as violative of due process, only if it is the product of an uncon-

---

[10] This is true even though the pretrial identification procedure occurred in the courtroom setting of a probable cause hearing. *State* v. *Fullwood,* 193 Conn. 238, 476 A.2d 550 (1984) (pretrial identification at a grand jury proceeding scrutinized to determine whether admission of subsequent identification at trial violated defendant's due process rights); cf. *United States* v. *Bouthot,* 878 F.2d 1506 (1st Cir. 1989) (pretrial identification not orchestrated by police scrutinized to determine whether admission of subsequent identification at trial violated defendant's due process rights).

stitutional pretrial identification procedure. *State* v. *Smith,* 200 Conn. 465, 469–70, 512 A.2d 189 (1986); see *United States* v. *Domina,* 784 F.2d 1361, 1368 (9th Cir. 1986). In determining whether a pretrial identification procedure violated a defendant's due process rights, "the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the 'totality of the circumstances.' " *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980). Because we conclude that in this case the procedure complained of was not unnecessarily suggestive, we need not reach the second question of the identification's independent reliability.[11]

We have recognized that generally a one-to-one confrontation between a victim and the suspect presented to him for identification is " 'inherently and significantly suggestive' " because it conveys the message to the victim that the police believe the suspect is guilty. *State* v. *Mitchell,* 204 Conn. 187, 201, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987); *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976). We agree with the defendant, as does the state, that the setting of the probable cause hearing was inherently suggestive. The fact that the

---

[11] If we had found that the procedure was unnecessarily suggestive, it would have been impossible for us to determine whether Lombardo's identification was nevertheless reliable since the record is insufficient for a review of that prong of the required constitutional test. The defendant's failure to make a motion to suppress or to voice any other objection to the procedure used at the probable cause hearing leaves us with no way of divining what evidence the state might have presented to rebut the defendant's claim of an unconstitutional identification procedure if that claim had been raised at trial.

defendant was conspicuously seated beside his lawyer at the defense table when Lombardo was asked to identify his assailant was as suggestive a scenario as an out-of-court single person showup or a first-time identification of a defendant at trial, where he is also conspicuously seated beside his lawyer at the defense table.[12] Our recognition that the probable cause hearing was suggestive does not, however, end our inquiry. We must next consider whether it was unnecessarily or impermissibly so.

The defendant argues that the suggestive confrontation was unnecessary and a violation of his due process rights because the prosecution could have conducted a lineup or placed him among the courtroom spectators rather than allow him to sit at the defense table beside his lawyer. With this contention we do not agree. In order to try the defendant, it was *necessary* for the prosecution to present evidence at the preliminary hearing to establish probable cause to believe that he had committed the crimes charged. Conn. Const., art. I, § 8, as amended;[13] General Stat-

---

[12] "When asked to point to the [assailant], an identification witness—particularly if he has some familiarity with courtroom procedure—is quite likely to look immediately at the counsel table, where the defendant is conspicuously seated in relative isolation. Thus the usual physical setting of a trial may itself provide a suggestive setting for an eyewitness identification." *United States* v. *Williams*, 436 F.2d 1166, 1168 (9th Cir. 1970), cert. denied, 402 U.S. 912, 91 S. Ct. 1392, 28 L. Ed. 2d 654 (1971).

[13] Conn. Const., art. I, § 8, as amended, provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or

utes § 54-46a.[14] At that hearing, the prosecution was thus entitled to elicit Lombardo's testimony on the issue of identification through the usual mode of putting him on the witness stand and asking him to identify his assailant if his assailant was present in the courtroom. The fact that the prosecution might have taken extraordinary steps to lessen the suggestiveness of the confrontation by using some other identification procedure does not render the routine procedure that was used unnecessary or impermissible. The defendant had no constitutional right to a lineup; *State* v. *Vaughn,* 199 Conn. 557, 562, 508 A.2d 430, cert. denied, 479 U.S. 989, 107 S. Ct. 583, 93 L. Ed. 2d 585 (1986); nor did the state have a constitutional duty to conduct one. *State* v. *Vass,* 191 Conn. 604, 611, 469 A.2d 767 (1983). The defendant, however, could have requested to be seated among the courtroom spectators or could have made a motion for a lineup prior to the probable cause hearing, pursuant to Practice Book § 782.[15] He failed to take either step.

life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

[14] General Statutes § 54-46a (a) provides: "No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause."

[15] "[Practice Book] Sec. 782.—OBTAINING NONTESTIMONIAL EVIDENCE FROM DEFENDANT UPON HIS MOTION

"Upon motion of a defendant who has been arrested, summoned, or charged in a complaint, information or indictment, the judicial authority by order may direct the prosecuting authority to arrange for the defendant's participation in one or more of the procedures specified in Sec. 775, if the judicial authority finds that the evidence sought could contribute to an adequate defense. The order shall specify with particularity the authorized procedure, the scope of the defendant's permitted participation, the

In determining that Lombardo's suggestive confrontation with the defendant at the probable cause hearing was not an unnecessary or impermissible one, we contrast that confrontation with other one-to-one confrontations held before trial, such as showups and single photo displays, which are conducted outside a courtroom. Typically, these pretrial procedures occur at or near the scene of the crime; e.g., *State* v. *Amarillo,* 198 Conn. 285, 503 A.2d 146 (1986); in hospitals; e.g., *State* v. *Mitchell,* supra; *State* v. *Guertin,* 190 Conn. 440, 461 A.2d 963 (1983); or at the police station; e.g., *State* v. *Monteeth,* 208 Conn. 202, 544 A.2d 1199 (1988); without a judge or lawyer present to protect the defendant against the suggestive tactics of the government. If a mistaken identification occurs as a result of such a suggestive procedure, there is a danger that the witness' subsequent identification at trial will be nothing more than a confirmation of the initial mistaken identification. *Stovall* v. *Denno,* supra. Importantly, since counsel is not ordinarily present at the typical pretrial identification, a defendant is less able to assail the reliability of the identification at trial or to make contemporaneous objection to the procedures used.

Although the probable cause hearing held in this case was a one-to-one pretrial confrontation, it was unlike a showup or single photo display in that it occurred in a courtroom. The initial identification made at the probable cause hearing, therefore, resembled an initial identification made at trial. While there is little doubt that the trial setting is suggestive, for the same reasons that a probable cause hearing is suggestive,[16] "[t]he manner in which in-court identifications are conducted is

designation of representatives of the prosecution who may be present, the time, duration, place, and other conditions of the procedure, and the person or persons who may conduct the procedure. Secs. 776 through 781 apply to procedures ordered under this section."

[16] See footnote 9, supra.

not of constitutional magnitude but rests within the sound discretion of the trial court." *State* v. *Smith,* supra, 470. "The defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination. . . . The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility." (Citations omitted.) Id. Because the defendant at the probable cause hearing had the same weapon of cross-examination to combat the suggestiveness of the setting; see General Statutes § 54-46a (b);[17] the risk of misidentification was held to a minimum.

That the routine, albeit suggestive, confrontation between Lombardo and the defendant at the probable cause hearing was "necessary" and entirely permissible is almost axiomatic. To hold otherwise would essentially assign to police and prosecutors a new constitutional duty to hold a lineup or other preliminary identification procedure in every case before an identification could be made at a probable cause hearing. We see no reason to impose such a duty. See *State* v. *Vaughn,* supra; *State* v. *Vass,* supra. While a situation could con-

---

[17] General Statutes § 54-46a (b) provides: "Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause."

ceivably arise in which the normally permissible suggestiveness of a confrontation at a probable cause hearing might rise to the level of an "unnecessarily suggestive" confrontation due to egregious conduct on the part of the prosecution, this is not such a case. Accordingly, we conclude that the trial court properly admitted Lombardo's identification of the defendant at trial since Lombardo's previous identification of him at the probable cause hearing was not the result of an unnecessarily suggestive procedure.

## II

The defendant next claims that the trial court's charge to the jury was erroneous in two respects. First, he argues that the charge given on the dangers of eyewitness misidentification was inadequate because it omitted two specific points contained in his request to charge. Second, he argues that the court improperly emphasized the state's evidence on the element of identification. We find neither argument persuasive.

## A

The thrust of the first argument is that the jury was not adequately alerted to the dangers inherent in eyewitness identification because, although the court did instruct the jury on many of the specific dangers, it did not instruct on: (1) the danger that Lombardo had misidentified the defendant due to the one year time lapse between the shooting and his positive identification of the defendant at the probable cause hearing; or (2) the fact that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness. The defendant concedes that the court did warn the jury of all the other dangers raised in his request to charge,

but claims that the omission of these two points constitutes reversible error.[18]

The dangers of misidentification are well known and have been widely recognized by this court and other courts throughout the United States. See *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972); *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); *State* v. *Davis,* 198 Conn. 680, 504 A.2d 1372 (1986); *State* v. *McKnight,* 191 Conn. 564, 469 A.2d 397 (1983). In *United States* v. *Telfaire,* supra, the United States Court of Appeals for the District of Columbia Circuit proposed model instructions for use in future cases to warn juries about the dangers inherent in eyewitness identification. "The *Telfaire* instruction tells the jury to consider in appraising the identification testimony of a witness the adequacy of his opportunity and his capacity to observe the offender; the length of time available for the witness to observe the offender; the proximity of the witness to the defendant; whether the witness had seen or known this person in the past; whether the identification was a product of the witness'

---

[18] In advancing this claim, the defendant characterizes Lombardo and LeVasseur as "uncertain, unclear or inconsistent" identification witnesses, emphasizing that both were habitual drug users, that LeVasseur was under the influence of drugs when the shooting occurred and that both had previously identified another man as the shooter. He also stresses the importance of the eyewitness identifications to the prosecution's case against him since there was no independent evidence linking him to the crime. These arguments are not dispositive because, while it is true that a trial court's refusal to give *any* special instruction whatsoever on the dangers inherent in eyewitness identification constitutes reversible error where "the conviction of the defendant [turns] upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent"; *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); *State* v. *Davis,* 198 Conn. 680, 504 A.2d 1372 (1986); in this case the trial court did give a special instruction on the topic, as the defendant himself admits. It is rather the adequacy of that instruction that we are asked to determine in this appeal.

own recollection; and the credibility of the witness."[19] *State* v. *Davis,* supra, 685. While we have used the model *Telfaire* charge as an aid in determining the adequacy of an instruction on eyewitness identification; id.; *State* v. *McKnight,* supra, 582; *State* v. *Harden,* 175 Conn. 315, 321, 398 A.2d 1169 (1978); we have never required that it be given verbatim in order to ensure that the jury is properly guided. *State* v. *Pollitt,* 205 Conn. 132, 152, 531 A.2d 125 (1987); *State* v. *Harrell,* 199 Conn. 255, 268–69, 506 A.2d 1041 (1986). "The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." *State* v. *Harden,* supra, 322; *State* v. *McKnight,* supra, 583.

Our review of the entire charge satisfies us that it was adequate to alert the jury to the dangers inherent in eyewitness identification. Throughout the charge the court emphasized that the burden was on the prosecution to prove the element of identification beyond a reasonable doubt. The court instructed the jury that when deciding the question of identification it should "consider all the facts and circumstances which existed at the time of the observations of the perpetrator by each witness," and that "the reliability of each witness is of paramount importance" and the testimony on identity should be "thoroughly scrutinized." It instructed the jury to consider the "totality of all the circumstances affecting identification," listing the following specific factors: "the opportunity which the witness had to observe the person, the degree of certainty of the identification made in court, whether the witness knew or had seen the person before the identification, the circumstances and degree of certainty or uncertainty

---

[19] In this case the defendant's request to charge substantially echoed the language of the model *Telfaire* charge.

of any out-of-court identifications made, whether by photograph or in lineup or other display of a person and the length of time available to make the observations of the perpetrator . . . the lighting conditions at the time of the crime, any physical descriptions that the witness may have given to the police, the physical and emotional condition of the witness at the time of the incident and the witness' powers of observation . . . ." The fact that this otherwise exhaustive charge lacked specific references to the time lapse between the shooting and Lombardo's identification of the defendant and to the greater reliability of an identification made from a group of similar individuals rather than from a one-to-one confrontation does not render it inadequate. "The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request . . . ." *State* v. *Harden,* supra, 322. The instructions given included the material portions of both the model *Telfaire* charge and the defendant's request and, as such, provided sufficient guidance to the jury on the issue of eyewitness identification.

## B

The defendant's second attack on the court's instructions is that the court improperly marshalled only the state's evidence in discussing identification. Because the defendant failed to raise this issue in the trial court, our review of this claim on appeal is limited to whether the court's conduct so deviated from the impartiality required that it deprived the defendant of a fair trial. *State* v. *Golding,* 213 Conn. 233, 239–41, 567 A.2d 823 (1989); *State* v. *Fernandez,* 198 Conn. 1, 9–14, 501 A.2d 1195 (1985); *State* v. *Taylor,* 196 Conn. 225, 231–32, 492 A.2d 155 (1985). The defendant claims that the court gave a "detailed re-enactment of the prose-

cution's case" whereas it neglected to mention that LeVasseur was under the influence of drugs when the shooting occurred, that Lombardo was a habitual drug user, and that one year had elapsed between the shooting and Lombardo's initial identification of the defendant. He contends that he was deprived of his constitutional right to a fair trial because the court emphasized only facts favorable to the prosecution and none favorable to him. We find this argument untenable.

"The function of the court in a criminal trial is to conduct a fair and impartial proceeding." *State* v. *Bember*, 183 Conn. 394, 401, 439 A.2d 387 (1981). The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter. *State* v. *Shannon*, 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Duffy*, 57 Conn. 525, 529, 18 A. 791 (1889). In this case, the court's references to the evidence were neutral in nature and did not exhort the jury to accept either party's view of the evidence. They were well within the bounds of fair comment.

Our review of the charge reveals that the court merely referred to some of the evidence presented by the state in an effort to guide the jury in applying the legal principles to the facts of the case. Throughout this portion of the charge, the court repeatedly stressed that the jury's recollection of the facts controlled and that it was the jury's responsibility to determine what weight, if any, to ascribe to the evidence. Moreover, contrary to the defendant's assertions, the court did indeed draw the jury's attention to evidence favorable to the defense. The court pointed out that Lombardo had made "prior identifications . . . from photo-

graphs" before identifying the defendant and that LeVasseur, too, had identified a person other than the defendant as the perpetrator of the crime. Because we find that the trial court did not improperly marshal the evidence, we reject the defendant's claim that the court's comments deprived him of a fair trial.

## III

The defendant next claims that the trial court improperly failed to instruct the jury that it could consider certain prior inconsistent statements made by Anthony Lombardo as substantive evidence, but limited their use to evaluating his credibility. Specifically, he claims that pursuant to this court's decision in *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986),[20] the trial court should have instructed the jury that it could consider substantively Lombardo's prior written and signed statements in which he asserted that he had identified another man, Jay Frazer, as his assailant and that LeVasseur, not Parrett, had opened the door to the apartment on the night of the shooting. The defendant preserved this claim of error by filing an appropriate request to charge and by taking exception to the portion of the charge, as given, that pertained to the use of prior inconsistent statements. The state concedes that the court's failure to give a *Whelan* charge was erroneous, but argues that the error was harmless. We agree with the parties that it was error for the court to refuse to instruct on the substantive use of Lombardo's prior written inconsistent statements, but we agree with the state that the error was harmless.

[20] In *State* v. *Whelan,* 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), we adopted a rule allowing "the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination."

We note first that the court's failure to give the requested *Whelan* charge was an evidentiary error that did not involve the violation of a constitutional right. Consequently, the burden rests upon the defendant to demonstrate the harmfulness of the court's ruling. *State v. Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988); *State v. Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980); but see *State v. Torres,* 210 Conn. 631, 642–43, 556 A.2d 1013 (1989) (state required to prove harmlessness where the court made a series of fundamentally unfair evidentiary rulings, escalating the error to a constitutional violation). To sustain this burden, the defendant must demonstrate that "it is more probable than not that the erroneous action of the court affected the result." *State v. Jones,* supra, 732; *State v. Ruth,* supra, 196–97; *State v. McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976).

We immediately dismiss the defendant's claim of harmful error with respect to the second inconsistent statement made by Lombardo concerning who had opened the door to the apartment on the night of the shooting. Whether it was Parrett or LeVasseur who opened the door that night could not possibly have affected the jury's decision about whether to find the defendant guilty of murder. Any error in that regard was thus harmless.[21]

Turning our attention to the first inconsistent statement made by Lombardo, we note that if the trial court

---

[21] The state points out, and we agree, that this error might have been advantageous to the defendant, because, having been instructed to consider the prior inconsistent statement for impeachment purposes only, the jury might have concluded that Lombardo was lying or mistaken on that point and thus, on a theory of falsus in uno, falsus in omnibus, that he was lying or mistaken with respect to the defendant's involvement in the crime. On the other hand, the defendant's cause would not have been so advanced had the jury considered Lombardo's prior statement that LeVasseur had opened the apartment door for its substantive truth, since that fact, in and of itself, had no capacity to exculpate the defendant.

had properly instructed the jury on the substantive use of Lombardo's prior identification of Frazer as the perpetrator, the jury could have concluded that Frazer, not the defendant, had fired the shots that killed Parrett. The erroneous charge given permitted the jury to conclude only that Lombardo might have been mistaken when he identified the defendant as the perpetrator since he had previously identified someone else. In both instances the jury would have been authorized to use the prior inconsistent statement to find that the defendant had not committed the murder of Parrett, either because Lombardo was lying at trial when he asserted that the defendant was the guilty party or because Lombardo was telling the truth when he had previously stated that Frazer was the guilty party. Since the jury could have acquitted the defendant based on Lombardo's prior inconsistent statement whether it considered that statement for its substantive truth or its impeachment value, we conclude that the defendant has not demonstrated that the court's erroneous instruction probably affected the result in this case. The instruction, therefore, was harmless.

## IV

The defendant's final claim of error is that the trial court deprived him of his constitutional right to a fair trial by questioning witnesses in such a way as to endorse the prosecution's view of the case, prodding the prosecution into making evidentiary objections and chastising defense counsel both in and outside the presence of the jury. Because the defendant failed to raise any objection concerning these matters in the trial court, we review this claim only to determine whether the court's actions deprived the defendant of his constitutional right to due process of law. *State* v. *Golding,* supra, 239–41; *State* v. *Fernandez,* supra, 9–10. We find this claim of judicial misconduct to be without merit.

Before turning to the allegations made by the defendant, we recite certain well established principles regarding the responsibilities of the trial judge in conducting a criminal trial. " 'Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. U.S. Const., amend. XIV; Conn. Const., art. I, § 8 . . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an "atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." . . .' " (Citations omitted.) *State* v. *Gordon,* 197 Conn. 413, 424D–25, 504 A.2d 1020 (1985); *State* v. *Fernandez,* supra, 10. Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so. *State* v. *Bember,* supra, 401–402. "Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts." *State* v. *Fernandez,* supra, 11.

Against this legal backdrop, we take up the first instance of alleged impropriety, when during defense counsel's cross-examination of Lombardo, the court asked him a question concerning the reason for his failure to identify the defendant from a photographic array shown to him by the police. During Lombardo's direct testimony, he had explained that he had refused to identify anyone from a photographic array shown to him and that he had told the police that he preferred to see the individuals in person because he could not be certain of any identification made from a photo-

graph. On cross-examination, defense counsel sought to draw attention to the fact that Lombardo had not identified the defendant from that photographic array, making no mention of Lombardo's professed reason for not doing so. After allowing defense counsel to show the photographic array to the jury, the court asked Lombardo whether his reason for not identifying the defendant was his refusal to make any identification without seeing the suspect in person. Lombardo answered affirmatively, confirming his earlier statement on direct. The defendant claims that the court's question bolstered the prosecution's case and worked to his disadvantage by conveying a message to the jury that the court endorsed the prosecution's view of the evidence. We see in the court's question nothing but an impartial attempt to clarify Lombardo's testimony on cross-examination in light of his previous testimony on direct. The court properly intervened to assist the jury in understanding the evidence before it.

The next impropriety alleged by the defendant is that in one instance the court assumed the role of an advocate by prodding the prosecution into making an objection. While cross-examining a police officer, defense counsel asked the officer to read aloud the testimony he had given previously at the probable cause hearing. Before the officer did so, the court interjected, "Wait a minute now. Let me see. Read an exhibit that is not in evidence?" The defendant claims that that remark prompted the prosecution to object and that the court thus showed favoritism to the prosecution's case. What the defendant fails to mention is that the prosecutor did not object after this "prompt" by the court, and the officer did proceed to read from the document. Given the outcome of this exchange, we fail to see how the defendant was prejudiced by the court's conduct.

The final alleged impropriety in the court's conduct was its repeated interruptions and chastisement of

defense counsel both in and outside the presence of the jury. Specifically, the defendant points to a time when, outside the presence of the jury, the court exhibited frustration with defense counsel for his failure to have the next witness ready to testify and to another time when, in the presence of the jury, the court rebuked defense counsel for misstating the evidence. We dispose of the first allegation summarily, noting that any misconduct that occurred outside the presence of the jury could not possibly have had an impact on its verdict. As to the second allegation, we see nothing inappropriate in the court's admonition of defense counsel. As this was only one of several instances in which defense counsel had misstated testimony given by a witness, the court acted well within its discretion in warning him not to persist in this tactic. In thus intervening, the court fulfilled its responsibility to see that the jury was not misled. *State* v. *Fernandez,* supra; *State* v. *Bember,* supra.

We decline to consider any other unspecified instances of judicial misconduct vaguely alluded to in several footnotes to the defendant's brief. Claimed errors not adequately briefed and not fully developed will not be considered by this court. See Practice Book § 4065; *Liscio* v. *Liscio,* 204 Conn. 502, 507, 528 A.2d 1143 (1987); *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 496, 208 A.2d 748 (1965).

The judgment is affirmed.

In this opinion the other justices concurred.