[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Edgar Tatum, filed a petition for a writ of habeas corpus on July 2, 1991, claiming that he received ineffective assistance of counsel at his criminal trial in violation of his constitutional rights under the sixth andfourteenth amendments to the United States constitution and article first, section 8 of the Connecticut constitution. On November 24, 1997, the petitioner filed an amended petition in CT Page 2757 response to the respondents request for a more specific statement. The respondent filed its return on December 1, 1997. The petition was heard on September 22, 23, and 24, 1998. The petitioner filed his trial brief on October 30, 1998, and the respondent filed its trial brief on November 10, 1998.
This matter, arises out of the petitioners conviction of murder, General Statutes § 53a-54a, following a jury trial held in the superior court for the judicial district of Waterbury. At trial the petitioner was represented by Attorney Thomas McDonough. Following his conviction, the petitioner was sentenced by the court, Heiman, J., to the custody of the commissioner of correction to serve a term of sixty years. The conviction was upheld on appeal. State v. Tatum, 219 Conn. 721,595 A.2d 322 (1991). The petitioner is presently incarcerated serving the sentence imposed by the trial court.
 I
On appeal, State v. Tatum, supra, 219 Conn. 721, the Supreme Court found that the jury in the criminal trial could have reasonably found the following facts:
"At approximately 10:30 p. m. on February 25, 1988, Larry Parrett was shot and killed in his home in Waterbury, where he lived with his girlfriend, Tracy LeVasseur. Anthony Lombardo, who lived on the same street, was also shot and wounded at the same time and place. Earlier that evening, Lombardo had been out walking his dog when he noticed a tall black man, later identified as the defendant, knocking on the door of Parrett's apartment. Lombardo approached the defendant, after having recognized him as someone he had seen at the apartment on other occasions. When LeVasseur opened the door from within, the defendant forced himself and Lombardo into the living room, where LeVasseur and Parrett were smoking cocaine. LeVasseur recognized the defendant as "Ron Jackson," a man from California who, along with other visitors from California, had spent a number of nights at the apartment selling drugs during the months preceding the incident. Parrett also had been involved in the sale of drugs. When the defendant and Parrett began to argue, Lombardo and LeVasseur left the room and went into the kitchen, where three other men were present. A few moments later, Lombardo returned to the living room to find the defendant pointing a gun at Parrett. Lombardo stepped between the two men, thinking that the defendant might be dissuaded from firing. The defendant nevertheless fired CT Page 2758 four shots from the gun, striking Lombardo in the shoulder and fatally wounding Parrett.
"That night at the Waterbury police station Lombardo was shown a photographic array from which he chose a photograph of a black man named Jay Frazer as that of the man who had shot him and Parrett. The same night LeVasseur also selected a photograph of Frazer from an array shown to her by the police. Neither array contained a photograph of the defendant. One week later, however, LeVasseur went to the Waterbury police and told them that she had identified the wrong man. A nine-person lineup was then conducted in which Frazer participated but the defendant did not. After seeing Frazer in person, LeVasseur told the police that he was definitely not the assailant. Thereafter, the police showed another photographic array to LeVasseur from which she chose the defendants photograph as that of the person who had shot the victim. Lombardo was subsequently shown a photographic array that included the defendant's picture, but he declined to identify anyone, explaining that he preferred to see the individuals in person. At the probable cause hearing and at trial, both Lombardo and LeVasseur identified the defendant as the man who had shot Lombardo and Parrett." (footnotes deleted.) State v. Tatum, supra, 219 Conn. 723-25.
The court finds the following additional facts from the habeas proceeding. The defendants trial counsel, Thomas McDonough, filed his appearance on February 3, 1989, shortly after being appointed as a special public defender. At the time of his appointment, McDonough had been a member of the Connecticut bar for approximately ten years. During those ten years he had handled a number of court side trials as well as a number of civil appeals. McDonough's criminal trial experience was limited to two felony jury trials prior to his representation of the petitioner. McDonough's recollection of events that occurred more than ten years ago was understandably less than complete at the habeas hearing. Nevertheless the court finds that his limited recollection of events was credible.
McDonough began the preparation of the petitioner's defense prior to filing his appearance. He reviewed the Public Defender's file that contained numerous police reports and statements of witnesses. Additionally, McDonough took advantage of the Waterbury State's Attorney's Office's "open file" policy. McDonough also sought and obtained information contained in the police files with respect to the arrest of Frazer, the first suspect in CT Page 2759 the shootings. McDonough then filed his appearance and met with the petitioner prior to the hearing in probable cause. On February 28, 1989, the hearing in probable cause was held. Prior to the commencement of the hearing the petitioner and McDonough discussed whether or not the petitioner should attempt to waive his presence at the hearing. McDonough testified that he was aware of both the positive aspects of having his client present at the hearing as well as the negative aspects of appearing without his client, especially when witness identification was to be a significant issue at trial. On the one hand, McDonough felt that the petitioner would be able to participate in judging the quality of the states evidence and the testimony of its witnesses. On the other hand, McDonough was aware that the identification witnesses would be given the opportunity to view the petitioner at the hearing. The principal identification witnesses LeVasseur and Lombardo, were familiar with both the petitioner and Frazer. In fact, the testimony at the criminal trial was that both Frazer and the petitioner had spent at least one night at 24 Cossett Street when LeVasseur was there. Lombardo, as has been previously noted, was also familiar with the shooter having seen him previously at 24 Cossett Street on a number of occasions.
In further preparation for trial, McDonough sent a letter to the office of the public defender dated March 2, 1989, requesting permission to incur expenses to retain an investigator and to order a copy of the transcript of the probable cause hearing which took place on February 28, 1989. Petitioner's Exhibit 6. As a result of this request an investigator was retained. McDonough met with the petitioner on numerous occasions and met with the investigator and the petitioner together on at least one occasion prior to trial. McDonough testified before the habeas court that he did substantial legal research on the issue of witness identification and consulted with the office of the public defender on other legal issues.
Initially, McDonough testified that the petitioner was reluctant to discuss with him his involvement with the witnesses or victims. Gradually, though, as time passed, he disclosed more information. McDonough then attempted to verify that information. McDonough's investigation showed that some of the information provided by the petitioner was not verifiable and some was inaccurate. This was particularly true with regard to the various alibi defenses that the petitioner had discussed with him. In one instance, McDonough received an unsigned letter. Petitioner'sCT Page 2760Exhibit 53A, concerning a potential alibi that provided the telephone number of a pawnshop in California and pawnshop ticket numbers. The petitioner had told McDonough that he was in California at the time of the shooting. McDonough called the pawnshop and found them to be uncooperative, but was able to determine that the pawn tickets were in the name of Lee Martin or Lee Thomas. Though McDonough was aware of the fact that the petitioner had used the aliases of Martin and Thomas, McDonough felt that since the tickets were not in the true name of the petitioner that the information was of little value. Furthermore, McDonough also knew that a man named Martin, who was not the petitioner, was one of the individuals arrested earlier in February, 1988, by the police after a complaint had been filed by the victim Parrett.
The petitioner, himself, testified at the habeas hearing with respect to certain alibi witnesses. These claimed alibi witnesses were his sister, a friend named Sabrina Peterson, and his son's mother. The petitioner claimed that his son's mother would testify that he was with her the night of the shooting. He stated that McDonough ". . . told me if my witnesses come down here that they would be put in jail over the weekend by the prosecutor for testifying falsely." Transcript, 111, (Tatum, September 23, 1998). None of these witnesses, however, testified at the habeas hearing and McDonough denied the allegation that he told the petitioner that these potential witnesses would be arrested. Id., 105.
The court finds the petitioners testimony on this issue lacks credibility. The petitioner had told counsel that at the time of the shooting that he was in California. Transcript, Sept. 23, 1998, 39. The petitioner also claimed that he told counsel he was in Connecticut with his son's mother. Alternative alibi defenses do not add to the petitioners credibility. It does, however, support McDonough's testimony that the petitioner gave him various alibis that were not able to be verified and changed at various stages after the arrest.
On October 27, 1989, McDonough wrote to John Murray, the private investigator who had been retained, setting forth in great detail the items that he felt needed to be investigated.Petitioner's Exhibit 7. The four page letter of instructions from McDonough to Murray states that McDonough enclosed "the extensive police report and statements" outlining the circumstances of the crime. This letter was sent to Murray approximately one month CT Page 2761 before jury selection commenced and three months before testimony commenced. No evidence was offered at the habeas hearing indicating that the request to investigate was not accomplished or that it was only partially completed, nor was Murray called as a witness at the habeas hearing.
McDonough formed a theory of the case based upon a claim of misidentification of the petitioner. He found support for this theory in that two of the states main witnesses, Tracy LeVasseur and Anthony Lombardo, initially identified Jay Randle Frazer as the man who shot Lombardo and killed Parrett. LeVasseur initially selected Frazer's picture from a photographic array shown to her by the police. Subsequently she returned to the police station to indicate that her identification was in error. She then proceeded to eliminate Frazer as the shooter when the police conducted a lineup. Lombardo also gave the police a statement and selected the picture of Frazer from a photo array that the police showed him.[1] At the criminal trial he testified that the police did not accurately draft the statement he had given them. He testified that he told the police that the shooter "looked like" the picture he selected. At the probable cause hearing and criminal trial Lombardo and LeVasseur identified the petitioner as the shooter. While Frazer bore a striking facial resemblance to the petitioner, Frazer is approximately 5'3" or 5'4" tall and the petitioner is at least 6'1" tall. Petitioner's Exhibit 7,at 2.
On March 24, 1988, the police arrested Ronald Gotay, age 17, on unrelated charges of possession of narcotics. At the time of his arrest he told the police that he had seen Frazer leaving the house where the victim had been shot. Petitioner's Exhibit 38. He stated that subsequent to his seeing Frazer leave the house he learned of the shootings. He did not want to get involved, though, because he feared getting shot himself. On March 31, 1988, Gotay gave a signed written statement to the police.Petitioner's Exhibit 39. In this statement Gotay gave the police significant additional details regarding the shooting. This information included: (1) the fact that he heard three shots; (2) that he was at the second floor apartment above where the victim was shot; (3) that he saw Frazer from approximately thirty feet away walking from the apartment after the shooting; (4) that he went downstairs and saw the victim lying face down on the kitchen floor bleeding; and (5) that he saw Lombardo against the living room wall also bleeding. On April 7, 1988, Gotay gave another statement to the police that confirmed some of the initial CT Page 2762 information that he had given to the police and further stated that at the time of the events he was with a Manuel Vargas and another man named "Eli." Petitioner's Exhibit 40. In this statement he added that both he and Manuel Vargas went down into the apartment after the shooting together and saw the victim.[2] On April 27, 1988, Gotay gave another written statement to the police. Petitioner's Exhibit 41. In this statement he recanted major portions of his previous statements. He told the police that he came upon the scene after the police had arrived, that he had learned about the shootings from other persons at the scene, and that he gave the earlier statements to the police in an effort to obtain favorable treatment on the charges for which he had been arrested. Gotay was not called as a witness at the petitioner's criminal trial nor at the habeas proceeding.
Miguel Vargas gave a sworn statement to the police on February 25, 1988, in which he indicated that he was checking the oil in his car which was parked three houses down from the victim's house when he heard three or four shots. When he looked up he saw a male in a long "grayish type coat" running from the house. He described the male as being a black male about 5 8" tall. He described this person as running in the direction of Orange Street. At the petitioner's criminal trial Miguel Vargas was not called as a witness.[3]
Attorney McDonough testified that he did not wish to attack the credibility of the investigative techniques of the Waterbury police as he wanted the jury to believe that the police were correct when their investigation lead to the initial arrest of Frazer. He indicated that he was concerned that by casting suspicion on the techniques employed by the police that resulted in the petitioner's arrest that he would weaken his theory that the police were correct when Frazer was arrested.
The petitioner called Attorney Thomas Farver as an expert witness at the habeas hearing. Attorney Farver is an experienced criminal trial attorney having gained his experience in both the military courts as well as in the criminal courts of this state. Farver testified as to certain aspects of McDonough's conduct of the trial to below the standard of a reasonably competent defense attorney.
Additional facts will be found as required in the discussion of the various issues. CT Page 2763
 II
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, section 8, of the Connecticut constitution. Copas v. Commissioner, 234 Conn. 139,153, 662 A.2d 718 (1995). In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsels performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Copas v. Commissioner, supra, 234 Conn. 153; Bunkley v. Commissioner, 222 Conn. 444,445, 610 A.2d 598 (1992)
To prove that his counsels performance was deficient, the A petitioner must demonstrate that trial counsels representation fell below an objective standard of reasonableness. Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.) Johnson v. Commissioner, 36 Conn. App. 695,703, 652 A.2d 1050, cert. denied, 233 Conn. 912,659 A.2d 183 (1995)
In Strickland, the Supreme Court opined: "[j]udicial scrutiny of counsels performance must be highly deferential. It is all too tempting for a defendant to second guess counsels assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsels defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsels challenged conduct, and to evaluate the conduct from counsels perspective at the time. Because of the difficulties CT Page 2764 inherent in making the evaluation, a court must indulge a strong presumption that counsels conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."Strickland v. Washington, supra, 466 U.S. 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.)Strickland v. Washington, supra, 466 U.S. 690; Quintana v.Warden, 229 Conn. 1, 5, 593 A.2d 964 (1991); Williams v. Warden,217 Conn. 419, 423, 586 A.2d 582 (1991); Jeffrey v. Commissioner, supra, 36 Conn. App. 219-20. However, it is clear that failure to investigate is not a matter of trial tactics. "Constitutionally adequate assistance of counsel includes competent pretrial investigation." Siemon v. Stoughton, 184 Conn. 547, 554,440 A.2d 210 (1981).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, "counsels errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required to demonstrate that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different. Copas v. Commissioner, supra, 234 Conn. 147. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra, 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408, 559 A.2d 1094, cert. denied,493 U.S. 981, 110 S.Ct. 512, 108 L.Ed.2d 514 (1989), quotingStrickland v. Washington, supra, 466 U.S. 695; Jeffrey v.Commissioner, supra, 36 Conn. App. 220-21.
 III
In count one of his amended petition the petitioner, CT Page 2765 employing a shotgun approach, points to a litany of alleged instances of trial counsel's lack of skill and diligence in representing him. Many of these claims were not developed at the habeas hearing nor addressed in the petitioners post trial memorandum of law. However, the claims that the petitioner appears to be pursuing can be distilled into six categories. The first category of claims centers on trial counsel's alleged failure to investigate the facts surrounding the crime including facts concerning an alibi defense. The second claim of ineffectiveness involves trial counsel's failure to properly and fully utilize certain evidence consistent with third party guilt or misidentification. The third claim involves the decision of trial counsel not to waive the petitioner's attendance at the hearing in probable cause thus allowing an in court identification of the petitioner as the perpetrator. The petitioner's fourth claim alleges that counsel conducted ineffective voir dire of the prospective jurors. The fifth claim states that trial counsel failed to take exception to the court's instructions to the jury that the petitioner claims unfairly marshaled the evidence against the petitioner. The final claim alleges that trial counsel was generally ineffective and that his performance, taken as a whole, did not meet the standard of a reasonable trial counsel.
In count two the petitioner alleges that the state's attorney failed to correct affirmative misstatements made by the state's witnesses in front of the jury. The petitioner sets forth three instances of such conduct in paragraph 10 of the Amended Petition. The respondent, in its return dated November 26, 1997, denied those allegations.
A. Failure to investigate the facts of the crime and various alibidefenses
The petitioner alleges that trial counsel inadequately investigated the facts and events surrounding the crimes. Specifically the petitioner alleges in paragraph 13 of his amended petition that trial counsel failed to "make adequate efforts to discover exculpatory information." The evidence introduced at the habeas hearing, however, demonstrates that trial counsel was aware of most, if not all, of the evidence that petitioner claims was undiscovered. For example, McDonough was clearly aware of the existence of Gotay and Vargas and had available to him the statements taken by the police as well as the police reports concerning Gotay and Vargas. He was fully CT Page 2766 aware of the existence of Frazer and the fact that he was originally arrested for the crime. Additionally, many of the issues raised by the petitioner were the subject of McDonough's letter to investigator Murray. The results of that investigation, though, are unknown as Murray was not called to testify at the habeas hearing. Also, Attorney McDonough was only briefly examined about the results of that investigation.
The petitioner further claims that his trial counsel was particularly lax in following up on certain information concerning an alibi. Attorney McDonough's own testimony verified that the petitioner had given him numerous alibis during the course of his representation. However, McDonough testified that he never filed a notice of alibi because when he attempted to verify the alibis, he discovered that the information he had been provided proved to be unsupported. In particular the petitioner gave McDonough information that would have placed him in California at the time of the shooting. This information proved to be either false or not subject to verification. No evidence of the petitioner's presence in California at the time of the shootings was offered at the habeas hearing on the alibi issue. The petitioner at the habeas hearing testified that his son's mother would have testified that he was with her the night of the shooting. This inconsistency in purported alibis was previously noted in this memorandum.[4]
There is a significant distinction between a claim of inadequate investigation and a claim of failure to use information that counsel discovered. It is no defense to a claim of inadequate investigation that it was a strategic decision by trial counsel not to investigate. "Failure to conduct an adequate investigation is not a matter of trial tactics. Counsel must make his decisions on an informed basis." Siemon v. Stoughton, supra,184 Conn. 547. However, the decision not to use certain information, may be justified as a strategic decision assuming it meets the standard of a reasonable decision by a competent defense counsel after an adequate investigation. Thus it is important that the petitioners claim be properly characterized in order to correctly apply the law.
The court finds little evidence in support of the petitioner's claim that the case against the petitioner was not thoroughly investigated. Contrary to the petitioner's assertions, very little evidence was adduced at the hearing that was the product of information not contained in trial counsel's criminal CT Page 2767 file. The petitioner has failed to meet his burden of demonstrating by a preponderance of the evidence that trial counsel conducted an inadequate investigation.
B. Failure to properly use available facts
The petitioner claims that trial counsel had a wealth of available information from which to construct a case of third party culpability or misidentification, but failed to properly use this information at trial. This failure, the petitioner alleges, resulted in the court's giving of only a very general charge on the element of proof of identification which caused the evidence to be marshaled in favor of the state. In support of his claim, the petitioner's trial brief sets forth nineteen separate claims. The court has reviewed the transcripts of the trial and the testimony and exhibits introduced at the habeas hearing and finds that the nineteen claims taken either individually or collectively do not meet the petitioner's burden of demonstrating that the petitioner was prejudiced. This is due in part to the strength of the states case and in part to the speculative nature of many of the petitioner's nineteen claims.[5] The court will review separately the issues raised by the petitioner that are of substance.
1. Failure to call Ronald Gotay
The petitioner claims that his trial counsel was ineffective for failing to call Gotay as a witness at trial despite the April 27, 1988 sworn statement by Gotay recanting his previous two identifications of Frazer as the shooter. The petitioner claims that, while the credibility of Gotay may have been seriously questioned in light of this recantation, the recanted testimony that was favorable to the petitioner could have been corroborated by Miguel Vargas and by the initial statements of LeVasseur and Lombardo. However, it is the opinion of this court that if the jury had in fact heard from Gotay it is highly probable that for a variety of reasons Gotay's testimony would have been discounted in toto.
Gotay's testimony would have been suspect initially because it was obtained by the police at a time when he had been arrested on unrelated drug charges. Gotay was 17 years old at the time. He admitted that he was hoping the information that he volunteered to the police would result in favorable treatment of the pending drug charges. Gotay's value as a witness for the defense also CT Page 2768 depended upon the jury believing the first two statements he made to the police in which he identified Frazer as a man he saw leaving the area of the shooting shortly after hearing the gun shots. In those statements Gotay indicates that he was on the second floor of 24 Cossett Street when the shooting took place on the first floor. He further indicated that he was with "Eli", "Rob" and Manuel Vargas. However, Eli, Rob, and Manuel Vargas did not, in any statement or testimony, give any indication of having been with or having seen Gotay on the night of the shooting.[6]
Gotay further stated that he saw Lombardo and LeVasseur on the first floor of 24 Cossett Street shortly after the shooting. Again neither of these individuals ever indicated that they had seen Gotay. If Gotay had been called as a witness at the criminal trial, in addition to his own admission of giving two false statements, it is likely that the facts contained in the first two statements would have been contradicted by at least two witnesses. The petitioner did not call Gotay or any of the five individuals that were at the scene to testify at the habeas hearing. In rendering his expert opinion that a reasonable defense counsel would have called Gotay, Attorney Farver did not discuss nor was he questioned about, the ability of the state to attack the first two statements of Gotay with the testimony of Wilson, Saunders and Manuel Vargas and potentially LeVasseur and Lombardo. Thus, the court does not credit Farver's opinion on this issue.
The court finds that counsel's decision not to call Gotay, assuming he was available, was not below the standard of a reasonably competent criminal defense attorney. In light of the contradictory statements by Gotay and the number of other persons available to impeach the substance of his first two statements, trial counsel was certainly reasonable in making the strategic decision not to call Gotay. The extremely limited potential value of his testimony was outweighed by both the strength of the state's case as well as trial counsel's consideration that these statements would call into question the investigative techniques of the police when trial counsel was attempting to demonstrate that the police were correct when they arrested Frazer for the crime. See Transcript, 66 (Tatum, September 22, 1998).
The petitioner has also failed to sustain his burden of demonstrating that he was prejudiced by the failure to call Gotay.
2. Failure to call Miguel Vargas
CT Page 2769
The petitioner next argues that his trial counsel was ineffective by failing to investigate and call Miguel Vargas as a witness at the criminal trial. Miguel Vargas claimed, in a statement given to the police, that he heard three or four gunshots on February 25, 1988, at about 11:15 P.M. He further stated that he witnessed an individual described as a black male, 5 8" tall, running from a house approximately three houses away from 30 Cossett Street where Miguel Vargas was standing at the time. Petitioner's Exhibit 42. Vargas's statement had been reviewed by counsel prior to trial. The description Miguel Vargas gave to the police did not match the description of the petitioner who is at least 6 1" tall. Neither did it match the description of Frazer who had been described as considerably smaller than 5 8". Based solely upon the content of Petitioner'sExhibit 42 the court finds that any reasonably competent defense counsel would conduct an investigation or interview of Miguel Vargas to determine his value as a witness.
Attorney McDonough directed his investigator to obtain a statement from Miguel Vargas in his letter of October 27, 1989.Petitioner's Exhibit 7, at 3. The results of that interview or whether or not it took place are unknown. Neither Miguel Vargas nor the investigators were called as witnesses at the habeas hearing. The petitioner, however, would have the court speculate that Miguel Vargas was either not interviewed by trial counsel or his investigator, or, that the information obtained from the interview was favorable to the petitioner. Neither speculation is warranted. Certainly if Vargas had testified at the habeas hearing that his view was not obstructed, that the lighting was sufficient, that he viewed the perpetrator for a sufficient length of time to determine his height, that he was certain in his estimate of the perpetrator's height and that he saw him either coming out of the house or in close proximity to it, the testimony of Vargas would have been helpful at the criminal trial. The court has no answers to these questions as the petitioner did not demonstrate that Vargas would have so testified. Also the results of Attorney McDonough's investigation of Manuel Vargas are unknown. The court finds that the petitioner has failed to show that Attorney McDonough did not investigate Vargas as a potential witness and he has failed to sustain his burden of proving by a fair preponderance of the evidence that the failure to call Miguel Vargas as a witness was inconsistent with the standard of a reasonably competent defense attorney. Moreover, the petitioner has not demonstrated any prejudice as CT Page 2770 required by Strickland.
3. Failure to call Hilton
The petitioner also claims that his trial counsel should have utilized John Hilton as a witness for the defense. Attorney McDonough interviewed Hilton at the prison where he was incarcerated on April 17, 1989. Petitioner's Exhibit 32. At that interview Hilton claimed to have been told by Frazer, when they were incarcerated at the same facility, that Frazer had "set" the petitioner up. Based on inmate records it is clear that there was a period of time when Hilton and Frazer were housed together. Attorney McDonough testified at the habeas hearing that he believed that he had his investigator check on the fact that they were housed together. He further recalled that they in fact were housed at the same prison, but there were some issues as to the accessibility of one to the other. McDonough also testified that he felt that there were some problems with Hilton's testimony. He testified that Hilton had originally stated that he heard the statement directly from Frazer. However, he later changed his statement indicating that he may have heard the statement from an unidentified third party. The court finds that the petitioner has failed to establish by a fair preponderance of the evidence that trial counsel's failure to call Hilton as a witness was below the standard of a reasonably competent defense attorney.
Additionally, the petitioner has not met his burden of establishing prejudice. As previously noted, the state's case was strong with regard to the identification of the petitioner despite the initial misidentifications. Not only did LeVasseur and Lombardo identify the petitioner as being at the scene but a third person, Wilson, who was also at the scene of the shooting told the police that he saw the gunman. Despite his reluctance to testify at the criminal trial and his claim of no present recollection, Wilson's sworn statement to the police described the gunman to the jury as 6 3" and about 170 pounds. Petitioner'sExhibit 25. This clearly would have eliminated Frazer as the shooter and further eroded the possible value to Hilton's testimony. Assuming Hilton claimed to have heard Frazer's statements directly, it is highly unlikely that Hilton's testimony would have had any significant impact on the jury in light of all the testimony to the contrary. This claim must fail as the petitioner has failed to meet the prejudice standard set forth in Strickland. CT Page 2771
C. The Probable cause hearing
The petitioner also claims that his trial counsel should have waived the petitioner's appearance at the probable cause hearing in order to prevent LeVasseur and Lombardo from viewing him and identifying him at the hearing. The facts elicited at the habeas hearing indicate that McDonough discussed with the petitioner that his defense would be based upon misidentification. McDonough also testified that he discussed with the petitioner the fact that he could attempt to waive his appearance at the probable cause hearing. They ultimately agreed, though, that the petitioner's ability to see and hear the witnesses would aide counsel in the defense as well as allow the defendant to evaluate the witnesses. The petitioner did not contradict McDonough's testimony when he testified.
Furthermore, the petitioner had already been identified by LeVasseur as the perpetrator. While LeVasseur and Lombardo had both initially identified Frazer as the perpetrator, there existed a plausible and simple explanation for that identification. Frazer had striking facial similarities to the petitioner. However, when LeVasseur viewed Frazer in a lineup, he was eliminated as the perpetrator based upon his height. Additionally, both witnesses prior to the events of February 25, 1988, had contact with both the petitioner and Frazer. In his memorandum the petitioner concedes that the effect on the jury would have been minimal.
The petitioner has not demonstrated that counsel's actions were less than that of a reasonably competent criminal trial attorney by a fair preponderance of the evidence, or that the petitioner was prejudiced by the failure of Attorney McDonough to seek to waive the petitioners presence.
D. Ineffective voir dire
The petitioner further alleges that his trial counsel failed to effectively voir dire the jury panel. This claim is easily disposed of as the petitioner has failed to demonstrate any prejudice resulting from this alleged claim. The petitioner attempts to demonstrate that McDonough was ineffective by identifying three specific instances of claimed ineffective voir dire. After reviewing the transcript and considering the testimony of Farver, the court does not find sufficient evidence to support the petitioners contention that Attorney McDonough was CT Page 2772 ineffective based upon inadequate voir dire.[7] Additionally, a mere review of the transcript does not reflect the tone and demeanor of the potential juror or the body language or other non verbal characteristics witnessed by those in the court room. A trial counsel's judgement is not solely based upon the actual words of the venire person, but includes how the words are expressed.
E. Failure to file a request to charge on identification and totake certain exceptions to the jury charge
The petitioner also claims that his trial counsel failed to request a charge on the defense's theory of misidentification.Petitioners Amended Petition, para. 2 (November 14, 1997). Furthermore, the petitioner claims Attorney McDonough failed to take exception to the jury charge that was given which caused the evidence to be marshaled in favor of the state. In response to the petitioner's claims, this court notes that Attorney McDonough did file a request to charge. Respondents Exhibit A. As to the alleged unfair marshaling of the facts, that issue was reviewed on appeal. The Supreme Court; State v. Tatum, 219 Conn. 721
(1991); in a limited review considered whether the "court's conduct so deviated from the impartiality required that it deprived the defendant of a fair trial." Id., 735. The Supreme Court determined that the trial court's conduct did not so deviate. Moreover, in light of the facts established at thehabeas hearing and a review of the criminal trial transcript, this court finds that the evidence was not unfairly marshaled in the states favor.
Additionally, the court finds no prejudice. There is no evidence that the charge given to the jury would have been materially different had trial counsel used the available information differently. It has also not been demonstrated that a different charge would have had any impact on the jury.
F. Failure by states attorney to correct misstatements ofwitnesses
The petitioner alleges in count two of his petition that the state's attorney at the criminal trial failed to correct certain "affirmative misstatements" by the states witnesses at trial. Specifically he claims that the states attorney should have corrected testimony regarding: (1) "multiple identification procedures participated in by the witness Anthony Lombardo with CT Page 2773 respect to Jay Randall Frazer"; (2) "the nature and extent of criminal charges pending against the witness Anthony Lombardo"; and, (3) "the suggestion that Petitioner had utilized the California identification in the name Ronald Jackson when checking into the Econo Lodge on February 23, 1988." This issue was not briefed by the petitioner in his post trial memorandum of law and therefore the court considers the claim waived and will not consider this issue. Practice Book §§ 5-1 and 5-2.
G. The collective failures of defense counsel rendered thedefense constitutionally inadequate.
The petitioner admits in his post trial memorandum that many of his claims of inadequate representation do not, standing alone, render the assistance he received from McDonough, constitutionally inadequate. However, the petitioner claims that taken collectively the alleged errors of McDonough do amount to ineffective assistance of counsel. Farver, the petitioner's expert, testified as to certain areas of representation that he felt did not meet the standard of a reasonably competent trial attorney. He charged that Attorney McDonough's conduct was unreasonable in that: (1) he failed to call Gotay and Miguel Vargas as witnesses; (2) he failed to probe Lombardo on the fact that he picked out Frazer as the shooter on two separate occasions; (3) he called Frazer as a witness demonstrating to the jury that Frazer's features were similar to the petitioner's; and (4) he neglected to show that Lombardo failed to pick the petitioner's photo from a photo array. The court disagrees with Farver's conclusions.[8]
While there is room for criticism of McDonough's performance with respect to some of his techniques and tactics, it is clear to this court that McDonough adequately investigated the facts surrounding the crimes committed and defended the petitioner in a manner that meets the standard of a reasonably competent criminal defense attorney. Much of the evidence proffered by the petitioner in support of his petition consists of speculation about what witnesses who were not called at the criminal trial might have said if they had been called. Yet, these same witnesses were not called at the habeas hearing. The fact is that two witnesses placed the petitioner at the scene of the shootings. One was a victim and the other was the girlfriend of the deceased victim, both of whom were familiar with the petitioner. A third witness identified the shooter as 6 3", the approximate height of the petitioner, when he looked into the CT Page 2774 living room at 24 Cossett Street and saw the shooter. The initial misidentifications of the perpetrator as being Frazer are easily explained by the remarkable facial similarities between the petitioner and Frazer. The case for the state was strong and the missteps by trial counsel were not of a magnitude that would render the trial constitutionally unfair.
Based upon all of the foregoing, the petition is dismissed.
Zarella, J.